TALIAFERRO, Judge.
Plaintiff sued to recover workmen’s compensation on the basis of permanent total disability. His employer, Calumet Refining Company, an Illinois corporation, is made defendant.
Fie entered defendant’s employ on August 9, 1948, and continued therein until April 29, 1950, when he was discharged, according to his foreman, for not performing his duties satisfactorily. He says he was discharged for other reasons. His classification was that of common laborer, his duties being that of pipe-fitter, and truck driver.- He has had a rather unusual record of back injuries. He alleged that in June or July, 1949, when lifting and adjusting pipes, he sustained a strain of the *685 lower back, followed by severe pain, but not so painful that he informed anyone about it, nor did he lose any time from work because of it. Four days'thereafter he felt well enough to engage in playing baseball, serving as catcher. ' He did not allege this incident, but testified that while in a squatting position, behind a batter, he badly wrenched his lower back when he leaned over to one side to retrieve a missed ball that had fallen to the ground. The ensuing injury and pain were so severe that he had.to quit the game, and laid off from work for four days. He consulted and was served by a chiropractor. The treatment consisted of putting him on vibrating machines. Nothing was done for the back except through this treatment. Thereafter the pain did not bother him so much and plaintiff reached the conclusion that he had fully recovered from the effects of these two incidents.
As to these two alleged accidents, plaintiff’s counsel, in brief, say that they “have no particular significance in view of the fact that plaintiff worked steadily .for nine months thereafter.” We fully agree with this.
On the morning of March 28, 1950, plaintiff was carried to the scene of his labor, along with. other employees, in a truck driven by his foreman, O. M. Parker, and there another accident befell him, which is really the one upon which he relies for success in this suit. Concerning prior accidents, and this last one, he alleged: “Believing his back was not seriously injured .and that it would ultimately heal”, he continued his work “until on or about the latter part of March, 1950, when your petitioner was engaged in moving a heavy log * * * at which time he felt a sharp and ■stinging pain in the lower part of his back, and subsequent to this time he has been unable to do any kind of hard manual labor without pain and discomfort.”
Amplifying his allegations anent the alleged injuries, he says he “sustained a severe laceration and bruise of the muscles, ligaments, tendons and soft tissue of his lower back, and in addition thereto, he has developed hypotrophic arthritic changes in the lumbar vertebra, consisting of lipping and spurring, which arthritic conditions have been aggravated by the trauma to his back, which changes will permanently disable him to do work of a reasonable character.” He also alleged that because of the trauma, he “probably has a ruptured disc * * * and a probable sacroiliac strain or sprain”, disabling in effect.
Defendant’s answer specifically puts at issue the happening of an aocident to plaintiff while performing the duties of his employment; and, additionally, alleged that if he now suffers any disability to work, such disability should be accredited to- conditions existing prior to his employment by defendant. Defendant appealed from judgment in plaintiff’s favor, as by him prayed.
Plaintiff gave the following account of the accident: That he and a fellow workman named Frankie Carter, accompanied Mr. Parker, his boss, from the defendant’s plant to an oil well that was being acidized; that Parker decided to move the acidizing truck -from the west side of the locus to the east side; that the ground was wet and slick and the wheels spun; that the progress of the truck was stopped when the right front wheel came in contact with a log lying partly buried in the mud; that Parker drove the truck forcefully against the log and then tried to run over it, but failed. He then ordered plaintiff and Carter to remove the log by their physical effort; that they undertook to comply with the order by taking hold of the log with their hands and lifting it, and he says: “I felt this here pain when I started pulling the log. I felt this pain hit me in the back real violently that time and I turned around and saw Parker and Galloway laughing at me”; that Parker then tried to move the log himself, but failed. He then moved it by means of a cable and winch.
Plaintiff, at time of the last accident, was thirty-eight (38) years old. He enjoyed a first rate record for hard work since 1936, at which time he began to earn a livelihood by labor for a pipe line company. He has followed that and similar work since that time. He was dis *686 charged or “laid off” by defendant on April 29, 1950, after working satisfactorily from the time of the alleged accident in March, or some thirty days.
Defendant stresses the fact, shown to be true, that plaintiff did not make known, nor report to his superiors, nor to fellow workmen, the happening of the accident alleged upon, until after he was “let out”. Mr. Parker, his foreman, was near when the log was moved, yet he was not informed of the injury plaintiff claims. He made no outcry about it. However, he did report it to his wife the day it happened and because he continued to suffer pain and discomfort he consulted his family physician, Dr. L. V. Landry, on April 11th, two weeks thereafter. He was then complaining of pain in the lower back region. Examination revealed “rigidity or muscle spasms” there. He was seen for attention by Dr. Landry three more times and on June 24th was advised to take his case to Dr. Ford J. MacPherson of Shreveport, orthopedic specialist, and did so. Dr. Landry’s diagnosis was “acute lumbosacral strain, which had failed to respond to any treatment”.
On June 24th Dr. MacPherson closely examined plaintiff, made appropriate tests and had X-ray pictures taken of the lower back region, after being -given the case history. Inter alia, Dr. MacPherson ad- . vised wearing appropriate brace, which was done, and satisfactory results followed. On first examination, the diagnosis was “mild dorsal roundback, with an acute lumbosacral 'angle, with a moderately severe lumbosacral sprain.” He .virtually ruled out rupture of the intervertebral disc between the- lumbar vertebra and the first sacral- segment. The patient was again seen and examined by Dr. MacPherson on August 2nd.' Some improvement over the interim was discernible, but to no great extent. .
Dr. MacPherson gave the accident of March 28th credit for the clinical conditions he found and was quite certain plaintiff was totally and permanently disabled to do hard manual l-abor.
Plaintiff was examined by Dr. J. M. Bodenheimer, general practitioner, on August 30, 1950. The usual tests were made. His opinion was that'plaintiff suffered from traumatic -arthritis. He was sure plaintiff was not a malingerer and that he was having the pains he professed to have. He was certain the injury of March 28th should be accredited with the conditions he found and that total permanent disability was the result.
Dr. Ruffin A. Paine, associated with Dr. Bodenheimer, assisted in the examination and tests made by the latter on August 30th. His conclusions and diagnoses were practically the same as were Dr. Bodenheimer’s.
The testimony of Dr. Gene D. Caldwell, outstanding orthopedic surgeon of Shreveport, who examined plaintiff first on June 30bh and again on September 26th, some two weeks prior to trial, was given. His conclusions after first examination are as follows:
“A. The man’s history, at that time, was suggestive of a herniated intervertebral disc, but there were insufficient positive objective findings to substantiate a diagnosis of that type. He presented clinical' evidence of some residuals of a lumbosacral strain. I felt, -at that time, that with adequate rest -and -protection and physiotherapy •that he should become entirely symptom free in the course of four to six weeks.
“Q. Was it likewise your opinion, at that time, that after the lapse of the four to six weeks, that he would -be able to return to any type of occupation, including hard manual labor? A. I felt that he would, yes.”
Between the examinations given by him, considerable improvement was noted by Dr. 'Caldwell. However, the patient persisted in his profession of disabling pain. The doctor’s conclusions after the second examination, were: “I am unable to-find any truly positive objective clinical or Roentgen evidence of- disability referrable to the lumbosacral spine”, the symptoms being entirely subjective. He also ruled out the presence of intervertebral disc trouble. He thought plaintiff should be able to per *687 form manual labor without danger to himself. So, we have in this case, as has occurred in many others, conflicting opinions of two eminent bone specialists as regards plaintiff’s physical condition. The opinion of Dr. MacPherson is supported by three general practitioners.
We 'have been favored with carefully prepared written reasons for judgment by the learned trial judge, who has had nearly a quarter century’s experience in cases of this character. We shall buttress what we say herein, and quote, with approval, the following excerpts from those reasons.
“Defendant contends that no injury happened to plaintiff in March, 1950, and that his disability, if any, which is denied, results from the injury to his back in June and July, 1949. It is to be noted, however, that plaintiff made no report of the pipe lifting injury, and continued to work until the injury he sustained playing ball, which laid him up for a few days. The man is only thirty-nine (39) years old, and, so far as the record shows, he has a perfect work record and has never had a claim for any injury before. It is entirely possible and is probable that plaintiff had hope that he could continue working, as he did after the other injuries, even though suffering some pain. Seeing and hearing defendant’s witnesses and reading the testimony for confirmation leads to the conclusion that some of plaintiff’s fellow workers, notably W. J. Watson, Hollis Blalock, O. W. Walker, Jr., and Frankie Carter, and his foreman, Ovid M. Parker, were especially interested in defeating plaintiff’s claim. The testimony they gave was in the main negative rather than positive. The apparent ignorance of their rights and responsibilities among many workers, who have appeared before me, as plaintiffs, in compensation cases during the past 21 years, is appalling, and my conclusion is that this is in some measure responsible for the action of plaintiff.
“Plaintiff produced an array of lay witnesses, most of whom had known him a long time, to prove his good work record and the fact that he acted and looked like a disabled man. Most of them had no interest in the outcome of this case. His brother-in-law, George W. Fowler, employed him as truck driver at a wage of over $90.00 a week, shortly after he was laid off by defendant, but he could not hold that job because of his back. It is passing strange that a man with a family dependent on him would prefer to claim an injury when he had none, and draw $30.00 a week compensation when he could earn much more working. Especially is this so in the case of a man with a perfect work record and never a compensation claim.
“The same situation exists as to the medical testimony. Five doctors testified for plaintiff and one, Dr. Gene D. Caldwell, for defendant. Of course, witnesses are not counted, but their testimony is weighed and given such place in the decision of the case as seems warranted.”
$ # ‡ 5}S ' j}{ í{í
“Undertaking a detailed discussion of the testimony of each of the many witnesses in the case, would serve no useful purpose. Parts of the testimony of many of them might justify the conclusion that plaintiff was not the victim of any accident at all, except the one in the ball game, and that he is suffering no disability at all, but when taken as a whole, the record justifies the conclusion that plaintiff did sustain an injury and that he is disabled.
“The same may be said of the able briefs filed in the case, and the many cases cited in support of the contentions made by each side. So far as I am concerned, each compensation case stands or falls on the record as made up on the trial.”
A careful study of the record, however, leaves us with the opinion that plaintiff’s injury is not permanent. We have considered many cases that involved injuries of the character here present, and were convinced that in a large percentage of them lumbosacral injuries are not necessarily permanent. The trauma sustained by plaintiff was not a most serious one, because he worked two weeks before going to his family physician, and continued to work thereafter until discharged. As said by the trial judge, he possibly did not realize he was injured as badly as has *688 been proven, and as did happen after the first accident, thought the effects of it would pass; away.
The trial judge, who saw and heard the witnesses and observed their demeanor while testifying-, had a much better opportunity to correctly appraise the weight and credibility of the testimony adduced than we. Surely, no manifest error appears in his findings as regards the factual issues tendered, save as to the duration of the disability.
For the reasons herein assigned, the judgment from which appealed is amended by reducing the period of compensation payments to a period not exceeding three hundred (300) weeks, and, as thus amended, it is affirmed with .costs.